IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

WILLIE WASHINGTON (N51271),                    )
                                               )
                        Plaintiff,             )
                                               )     Case No. 23 C 2525
            v.                                 )
                                               )     Hon. Manish S. Shah
D. VASALLO,                                    )
                                               )
                        Defendant.             )

MEMORANDUM OPINION AND ORDER

Plaintiff Willie Washington brings this *pro se* civil rights action, 42 U.S.C. § 1983, alleging that an officer from Stateville Correctional Center used excessive force in securing him to a chair following surgery at UIC Hospital in August of 2022. Defendant Officer David Vasallo argues that he is entitled to summary judgment because no excessive force was used and he is entitled to qualified immunity. For the reasons that follow, the motion is granted.

## I. Background

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a)(2) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). Local

Rule 56.1(d)(2) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation."

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). A response may not set forth new facts or legal arguments. LR 56.1(e)(2). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendant served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. (Dkt. No. 55.) Plaintiff responded by submitting a memorandum in opposition to the motion (Dkt. No. 59), various exhibits (Dkt. Nos. 61-65), including a Declaration (Dkt. No. 62 at pgs. 9–21), and a response to Defendant's Statement of Facts (Dkt. No. 60).[1]

Plaintiff's response to Defendant's Statement of Facts consists largely of an attempt to add additional facts, as his response often indicates "controverted as

---

[1] Plaintiff later submitted a motion to supplement his response with an ultrasound report showing what appeared to be a ganglion cyst on his left wrist (Dkt. No. 68), and an amended response, another memorandum of law, and another declaration after briefing had concluded and without leave of court. (Dkt. Nos. 72–74.)

incomplete." Although this is not a proper way of asserting additional facts, LR 56.1 (b)(3), (e)(2), the Court will consider Plaintiff's factual statements to the extent they are supported by the record, or to the extent he could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013). Where Plaintiff has not properly disputed a fact, the Court will accept it as true. *Smith*, 321 F.3d at 683.

Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendant's motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

## B. Relevant Facts

Plaintiff Willie Washington was in the custody of the Illinois Department of Corrections, Stateville Correctional Center. (*See* Def.'s SOF, Dkt. No. 54, at ¶¶ 1–2; Pl's. Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 1.) Plaintiff was at that time, and is at present, ineligible for parole due to a mandatory life sentence. (*Id.*) Stateville was a maximum-security prison. (*Id.*) Plaintiff adds that he was a medium security inmate (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 2.) Defendant David Vasallo was a correctional officer at Stateville from November 2019 through December 2024. (Def.'s SOF, Dkt. No. 54, at ¶ 3.)

Plaintiff was held at the Northern Reception and Classification Center at Stateville on a medical furlough because of its proximity to UIC Hospital. (Pl.'s Resp.

to Def.'s SOF, Dkt. No. 60, at ¶ 2.) A prisoner on medical furlough is still within the custody of IDOC. (Def.'s SOF, Dkt. No. 54, at ¶ 5.) Thus, correctional officers are required to continuously supervise prisoners on medical furlough for the safety of the prisoner, for the safety of any civilians who may interact with the prisoner, and to prevent escape. (*Id.*)

Security personnel are trained to use a three-point restraint system to restrain individuals in custody. (*Id.* at ¶ 9.) This consists of one wrist being secured to a solid metal point on the securing furniture (hospital bed, chair, etc.) while the individual in custody remains restrained at both wrists, and a waist chain or black box chain secured to a set of leg irons applied to the individual in custody's legs and attached to a metal point on the securing furniture. (*Id.*)

Each time an individual in custody is secured, the escorting personnel must notify the shift supervisor. (*Id.* at ¶ 10.) Plaintiff contends that this policy was not uniformly followed. (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 10; *see also* Pl.'s Decl., Dkt. No. 62, at pg. 12, ¶¶ 16-23.)

In an outside medical facility, security restraints can be removed only for medical reasons when requested by the attending physician or the emergency room staff. (Def.'s SOF, Dkt. No. 54, at ¶ 11.) Once escorting personnel receive an order to unfasten restraints from the qualified medical staff, they must contact and receive approval from the shift supervisor before removing the restraints. (*Id.* at ¶ 12.) Plaintiff, again, does not dispute this, but indicates that this policy was not always

followed. (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 11; Pl.'s Decl., Dkt. No. 62 at pg. 11, ¶¶ 10-12.)

Plaintiff was admitted to UIC Hospital on Aug. 16, 2022, to undergo surgery to remove a cyst in his jaw. (Def.'s SOF, Dkt. No. 54, at ¶ 13.) The surgery was conducted on Aug. 17, 2022, which involved a procedure where Plaintiff's mandible was reconstructed with tissue from his fibula, along with repair of damaged nerves. (*Id.*) Plaintiff was discharged from UIC Hospital on Aug. 23, 2022. (*Id.*)

Plaintiff's post-operative treatment plan included physical therapy for one hour daily while he was hospitalized. (*Id.* at ¶ 14.) Doctors indicated that Plaintiff should not be restrained during his physical therapy sessions. (*Id.* at ¶ 15.) Doctors also issued an order for Plaintiff to have modified bed rest sitting up in a chair because Plaintiff had reported difficulties breathing while laying flat in his bed. (*Id.* at ¶ 16.)

On or about Aug. 20, 2022, Officer Vasallo reported to UIC Hospital to monitor Plaintiff in relief of Officer Johnson. (*Id.* at ¶ 17.) When Officer Vasallo first saw Plaintiff on that day, it was his understanding that Plaintiff was not restrained because he had just finished physical therapy. (*Id.* at ¶ 18.) Officer Vasallo informed Plaintiff that he would need to put Plaintiff's restraints back on and secure them to the chair in which he was sitting. (*Id.* at ¶ 19.)

Plaintiff denies having physical therapy while at the hospital and contends that he had a handcuff on his left wrist when Officer Vasallo first encountered him on the day of the incident. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶¶ 14, 19.) He

also contends that Officer Vasallo had monitored him the day before, on Aug. 19, 2022, when Plaintiff was in a hospital bed without restraints on his legs. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶¶ 17-18.)

According to Officer Vasallo, as he put the restraints on, Plaintiff became visibly upset. (Def.'s SOF, Dkt. No. 54, at ¶ 20.) Officer Vasallo reiterated the necessity for restraints and went ahead with applying them, consistent with his training and understanding of IDOC policy. (*Id.*) Officer Vasallo put a wrist cuff on Plaintiff that was secured to a metal point on the chair, and a leg iron on the non-operative leg away from any attached medical devices. (Def.'s SOF, Dkt. No. 54, at ¶ 21.) He determined that leg irons would not fit over the bandaging on Plaintiff's operative leg, so he did not attempt to apply one. (*Id.* at ¶ 22.) Plaintiff remained in the chair throughout this interaction. (Def.'s SOF, Dkt. No. 54, at ¶ 23.)

Nurses in the room noticed Plaintiff being restrained, either because Plaintiff pressed the emergency button or because they were nearby. (Def.'s SOF, Dkt. No. 54, at ¶ 24.) The nurses told Officer Vasallo that they did not think restraints were appropriate. (*Id.*)

Officer Vasallo told the nurses that the restraints could be removed only upon request by a doctor and after approval by his shift supervisor. (Def.'s SOF, Dkt. No. 54, at ¶ 25.) Officer Vasallo also told the nurses he needed to follow the procedures for his job if they wanted the restraints removed. (*Id.* at ¶ 26.) Soon after, a nursing tech entered the room and joined the chorus expressing dissatisfaction with the continued need for restraints on Plaintiff. (*Id.* at ¶ 27.) Officer Vasallo understood

that none of these individuals were attending physicians or doctors. (*Id.* at ¶ 28.) After the nurses objected, Officer Vasallo called his supervisor, Major Shashonna Cole, to update her on the situation. (Def.'s SOF, Dkt. No. 54, at ¶ 29.) Major Cole ordered Officer Vasallo to keep Plaintiff properly restrained until he heard from a doctor. (*Id.* at ¶ 30.)

When a nurse gave Officer Vasallo a note from a doctor to have the restraints removed about 20 minutes later, Officer Vasallo immediately called Major Cole back to update her in accordance with his training. (*Id.* at ¶ 31.) Major Cole then directed Officer Vasallo to comply with the doctor's request, which he did immediately. (*Id.* at ¶ 32.)

Plaintiff recounts a different version of events. As Officer Vasallo restrained him, he began to cry due to "excruciating pain" in his left wrist, both legs, and the site of his tracheotomy. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 20.) Plaintiff contends that Officer Vasallo told him, "You're getting your fucking ass back in bed." (*Id.*) Officer Vasallo then tried to put leg irons on both legs, causing him to cry. Because Plaintiff's left leg was swollen, Officer Vasallo "zip-tied" it. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶¶ 21-22.) Plaintiff asserts that Officer Vasallo "attempted" to move him to the hospital bed (*see id.* at ¶ 23), although it does not appear that he actually did so. (*See* Pl.'s Dep., Dkt. No. 54-2, at 23:2-4.)

Plaintiff adds in his Declaration that Officer Vasallo applied most of his weight to Plaintiff's post-operative leg by leaning on that leg as he adjusted the restraints. (*See* Pl.'s Decl., Dkt. No. 62, pg. 16, at ¶ 40.) He further states that when Officer

Vasallo tightly re-fastened the handcuff on his left wrist, Plaintiff made grunting sounds and pointed to his legs and wrists. (*Id.*) Plaintiff also contends that Officer Vasallo started moving his legs around, "lifting up my lower extremities and shaking me." (*Id.* at ¶ 41.) He contends that Officer Vasallo moved him around "so harshly that he disturbed my tracheotomy." (*Id.*)[2]

Plaintiff contends he should not have been restrained in the first place because a doctor issued an order on Aug. 17, 2022, for no restraints to be placed on his post-operative leg. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 28.) He points to a note from Dr. Isaac Ellison stating the following: "Mr. Willie Washington . . . is under our care after undergoing a fibula free flap procedure. It is necessary that Mr. Washington has a cam boot and wound dressings for a minimum of 5 days from today 8/17/2022 for proper healing. Please don't place any restraints on this leg." (Dkt. No. 57 at pg. 212.) Someone, presumably the doctor, handwrote "left leg" under "this leg." (*Id.*) Plaintiff argues that Defendant Vasallo was aware of this order before restraining him but

---

[2] Defendant argues that the Court should disregard these additional statements in Plaintiff's Declaration as inconsistent with his deposition testimony. (*See* Def.'s Reply in Supp. of Mot. for Summ. J., Dkt. No. 69, at pg. 5.) The "sham-affidavit rule" prohibits a party from submitting an affidavit that contradicts his prior sworn testimony. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The rule reflects the principle that "a *genuine* issue of material fact cannot be conjured out of nothing." *Id.* (emphasis in original). Nonetheless, the rule must be applied carefully "because summary judgment is not a tool for deciding questions of credibility." *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 634 (7th Cir. 2024) (cleaned up). Statements should not be excluded as a sham unless the witness has "given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* The rule does not apply where the affidavit builds upon and amplifies facts already in the record, *see id.* at 635, which is the case here. The Court will therefore consider Plaintiff's description of events as set forth in his Declaration.

does not point to any evidence in the record supporting this proposition. (*See* Pl.'s Brief in Resp. to Mot. for Summ. J., Dkt. No. 59, at pg. 2.)

Plaintiff contends that although Officer Vasallo removed the leg restraints after receiving a doctor's order, he did not adjust the left handcuff. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 32.) He estimates that the incident took about 45 minutes. (*See* Pl.'s Decl., Dkt. No. 62, pg. 20, at ¶ 56.) Officer Johnson, who returned to supervise Plaintiff after this incident, loosened the handcuff on his left hand. (*Id.* at ¶ 60.)

Plaintiff contends the handcuff on his wrist created a "knot" and "killed the nerve on [his] hand." (Def.'s SOF, Dkt. No. 54, at ¶ 33.) Plaintiff's medical file from May 2022 to November 2022 does not include any record showing that Plaintiff complained to a medical provider about this or a diagnosis for any injury to his hand. (*Id.* at ¶ 34.) Plaintiff states that he complained about numbness in his left hand in February and March 2023. (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 34; Dkt. No. 62 at pg. 22.) Plaintiff also points to an ultrasound that he had on his left hand in February 2024. (Dkt. No. 62 at pg. 24.) Plaintiff later submitted a copy of that ultrasound report along with a motion to supplement his response. (Dkt. No. 68.)[3] The ultrasound report indicates a lump on Plaintiff's left wrist that may be a ganglion cyst. (*See id.*) The report contains no indication as to when or how the lump developed.

Plaintiff does not have any professional medical training, as his highest level of education is completing the ninth grade. (Def.'s SOF, Dkt. No. 54, at ¶ 35.) Even

---

[3] The Court will grant Plaintiff's motion to supplement the record and has considered the ultrasound report of Plaintiff's left wrist in ruling on this motion.

so, Plaintiff testified that Officer Vasallo did something to his leg, because "the muscle is pulling me now, and that's never supposed to happen." (*Id.* at ¶ 36.) Plaintiff's medical file from May 2022 to November 2022 does not include any record indicating that Plaintiff complained to a medical provider about this issue or received a diagnosis concerning an injury to his leg. (*Id.* at ¶ 37.) Plaintiff disputes this by contending that he complained about leg pain due to this incident in March and May 2024. (Pl.'s Resp. to Def.'s SOF, Dkt. No. 60, at ¶ 37; *see* Dkt. No. 62 at pg. 25.)

Plaintiff also attributes difficulties with eating and swallowing food to Officer Vasallo moving him around. (Def.'s SOF, Dkt. No. 54, at ¶ 38.) Plaintiff's medical file from May 2022 to November 2022 does include references to Plaintiff's impaired ability to eat. (*Id.* at ¶ 39.) There is no diagnosis or opinion from a medical professional that this symptom is traceable to Officer Vasallo's conduct. (*Id.*)

As a result of Officer Vasallo's "attack," Plaintiff reported elevated blood pressure (for which he takes medication to treat), wheezing, and hard breathing that "could have killed [him]." (*Id.* at ¶ 40.) Plaintiff's medical file from May 2022 to November 2022 does include records showing a prescription for Amlodipine to treat high blood pressure. (*Id.* at ¶ 41.) However, there is no diagnosis or opinion from a medical professional that this symptom is traceable to Officer Vasallo's conduct. (*Id.*) Plaintiff's medical file from May 2022 to November 2022 also does not include any records showing that he experienced life-threatening wheezing and difficulty breathing traceable to Officer Vasallo's conduct. (*Id.* at ¶ 42.)

When Plaintiff was transported back to the Northern Reception and Classification Center on Aug. 23, 2022, IDOC medical staff evaluated him and completed a Health Status Transfer Summary. (*Id.* at ¶ 43.) During that evaluation, Plaintiff made no complaints other than that he was afraid of the wounds from his procedure getting infected. (*Id.* at ¶ 44.) There were no complaints of any new injuries he received while at UIC Hospital. (*Id.*)

## II.    Analysis

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court construes all facts in the light most favorable to the non-moving party and draws all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

Defendant argues that he is entitled to summary judgment because he did not use excessive force and alternatively, that qualified immunity bars this claim because the undisputed facts do not demonstrate the violation of any clearly established right.[4]

### B.    Excessive Use of Force

A correctional officer's use of excessive force violates a prisoner's Eighth Amendment right against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). When assessing the use of restraints during medical care, a court

---

[4] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred within the Northern District of Illinois while Plaintiff was in the custody of IDOC at Stateville. (*See* Def.'s SOF, Dkt. No. 54, at ¶ 4.)

must ask whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm, while considering such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 764 (7th Cir. 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

In the specific context presented here, "courts must be reluctant to interfere with security measures instituted by prison officials, especially when the issue is transport outside the prison facility. Such measures do not violate the Eighth Amendment absent a showing that they 'constitute[ ] a wanton infliction of pain that is totally without penological justification.'" *Verser v. Smith*, No. 14 C 1187, 2017 WL 528381, at *4 (N.D. Ill. Feb. 9, 2017) (quoting *Hanna v. Lane*, 610 F. Supp. 32, 35 (N.D. Ill. 1985)); *see Soto v. Dickey*, 744 F.2d 1260, 1269 (7th Cir. 1984) (collecting cases and observing that prison officials "must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security."). The deference due to prison officials applies not only to actions taken in response to an active security threat, but those taken as preventative measures to prevent security threats from arising. *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Defendant argues that Officer Vasallo applied force in a good-faith effort to maintain discipline. It is undisputed that IDOC policy requires three-point restraint of an individual in custody on a medical furlough, and that such restraints can be

removed for medical reasons when requested by the attending physician. Once an officer receives such an order from qualified medical staff, the officer must contact and receive approval from the shift supervisor before removing the restraints. The undisputed evidence is that Officer Vasallo contacted Major Cole when Plaintiff and the nurses objected to the restraints. Major Cole instructed Officer Vasallo to keep Plaintiff properly restrained until he heard from a doctor. When a nurse gave Officer Vasallo an order from a doctor to remove the restraints, he immediately called Major Cole, who directed him to comply with the doctor's instructions, which he did.

Plaintiff contends that he should not have been restrained in the first place because Officer Vasallo had knowledge of an order for him not to be restrained, apparently referring to Dr. Ellison's order that restraints should not be placed on his post-operative leg for five days. Plaintiff argues that Officer Vasallo must have known of this order because he supervised Plaintiff the day before the incident. (*See* Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 59, at pg. 2.) But Plaintiff points to no evidence that Officer Vasallo had received a copy of this order. And Plaintiff does not dispute that Officer Vasallo needed permission from Major Cole to remove the restraints.

Several factors are relevant to determining whether a defendant applied force in good faith or for the purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force. *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009) (citing *Whitley*, 475 U.S. at 321).

14

There was a need for application of force in order to restrain Plaintiff. Although Plaintiff was recovering from surgery, and did not pose an active threat, security remained an ongoing issue throughout his hospitalization. *See Hoyte v. Wagner*, No. 07-4138, 2009 WL 215342, at *2 (3d Cir. Jan. 30, 2009) (unreported) (prison officials "have a legitimate and important security interest in restraining those in their custody while they receive off-site medical care in unsecured hospitals."); *Willis v. Pfister*, No. 18-cv-333, 2024 WL 216672, at *15 (N.D. Ill. Jan. 19, 2024) (observing that handcuffs and shackles "are a necessary part of incarceration" and "there is nothing 'cruel and unusual' about restraining prisoners, especially when they're outside the prison walls."); *Morissette v. Godinez*, No. 94 C 19, 1994 WL 30965, at *1 (N.D. Ill. Feb. 1, 1994), *aff'd,* 103 F.3d 133 (7th Cir. 1996) (collecting cases holding that the use of physical restraints on inmates being transported inside and outside of the prison does not amount to cruel and unusual punishment).

The third factor, the threat reasonably perceived by the officer, weighs in favor of Plaintiff, as Plaintiff contends that Officer Vasallo handled him roughly during the application of restraints at a time when he was in a weakened state due to surgery. In regard to the fourth factor, any effort to temper the severity of force used, this weighs in favor of Defendant, as it is undisputed that Officer Vasallo contacted his supervisor in response to the complaints made by Plaintiff and nurses and removed the leg restraints once he received a doctor's order and his supervisor's approval. Compliance with prison policy weighs in favor of a finding that Defendant tempered his use of force and acted in good faith. *Williams v. Benjamin*, 77 F.3d 756, 766 (4th

Cir. 1996); *see also Wilson v. Cooper*, 922 F. Supp. 1286, 1291 (N.D. Ill. 1996) (granting summary judgment in favor of officer who used metal restraints to restrain prisoner until he could verify doctor's order to use leather restraints).

The second factor, the amount of force used, is more complicated. Taking the evidence in the light most favorable to Plaintiff, Defendant applied his weight to Plaintiff's post-operative leg, tightly re-fastened the handcuff on his left wrist, and moved Plaintiff around so harshly that he disturbed Plaintiff's tracheotomy site. Plaintiff's testimony suggests that Officer Vasallo used more force than necessary in this interaction. Even so, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. In particular, the infliction of pain in the course of carrying out a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley*, 475 U.S. at 319. Rather, the Court is cognizant that "[a]n inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (cleaned up). The conduct must either involve "significant force," or if the force used was *de minimis*, it must be "repugnant to the conscience of mankind." *Holloway v. Doe*, No. 22-2717, 2023 WL 7412949, at *2 (7th Cir. Nov. 8, 2023) (unreported). While Plaintiff has evidence that Officer Vasallo treated him more harshly than necessary, he has not brought forth evidence suggesting that

Officer Vasallo used significant force or that his use of force was repugnant to the conscience.

In this regard, the extent of the injury weighs heavily in favor of Defendant. Plaintiff has brought forth no evidence that Officer Vasallo's actions caused or exacerbated any injuries suffered by Plaintiff. While Plaintiff complains about nerve damage in his hand, a muscle "pulling" in his leg (it is unclear what he means by this), and difficulties swallowing and eating, he points to no evidence that a medical professional diagnosed him with these issues or attributed them to Officer Vasallo's conduct. Plaintiff's complaints of numbness in his left hand in February and March 2023, about six months after the incident at issue in this case, without any evidence indicating that numbness was caused by Officer Vasallo's conduct, are insufficient to support Plaintiff's claim of severe injuries. The same is true as to the apparent ganglion cyst on Plaintiff's left wrist shown in the February 2024 ultrasound—no evidence links this issue to Officer Vasallo's use of force in August of 2022, and Plaintiff is not qualified to opine that it was caused by Officer Vasallo. *See Williams v. Roark*, No. 2:21-cv-00128, 2024 WL 198392, at *12 (S.D. Ind. Jan. 18, 2024) (prisoner with no medical training or expertise was not qualified to testify that he suffered head trauma, memory loss, or nerve damage due to use of force); *Sistrunk*, 931 F. Supp. 2d at 854 (layperson may not testify about matters involving medical or other specialized knowledge).

Plaintiff is competent to testify that Officer Vasallo's alleged tight handcuffing and pulling on him caused him pain and discomfort. The issue, however, is that it is

undisputed that state regulations required Plaintiff to be restrained while on medical furlough, and that such restraints can be removed for medical reasons only when requested by the attending physician and approved by a shift supervisor. Some physical force invariably was necessary in order to restrain Plaintiff, and that it caused Plaintiff pain and discomfort does not support a constitutional violation. *See United States v. Waldman*, 835 F.3d 751, 755 (7th Cir. 2016) ("A prisoner cannot prevail under the Eighth Amendment because he reasonably believed his handcuffs were too tight causing momentary interruption of his circulation." ) (cleaned up); *Smith v. Butler*, No. 21-3082, 2023 WL 3706544, at *4 (7th Cir. May 30, 2023) (unreported) ("[E]ven 'deliberately' and 'unnecessarily' inflicting a slight increase in pain during legitimate security measures does not violate the Eighth Amendment.") (citing *Outlaw v. Newkirk*, 259 F.3d 833, 839–40 (7th Cir. 2001)); *see also Verser*, 2017 WL 528381, at *6 (collecting cases indicating that handcuffing may result in minor injury or discomfort without any excessive use of force). Particularly in the Eighth Amendment context, where the security interests of the prison are "always high," courts must be skeptical in addressing handcuffing claims without any proof of serious injury. *Verser,* 2017 WL 528381, at *7; *see Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (in Fourth Amendment context, relying in part on lack of injury to find that force used in handcuffing was not excessive).

Plaintiff has not brought forth sufficient evidence by which a reasonable jury could find that Officer Vasallo acted maliciously and sadistically to cause harm,

rather than in a good-faith effort to maintain discipline. Defendant therefore is entitled to summary judgment.

### C.    Qualified Immunity

Next, Defendant argues that he is entitled to qualified immunity because the undisputed facts do not demonstrate the violation of any clearly established constitutional right.

"State correctional officers are immune from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Kind*, 140 F.4th 359, 369 (7th Cir. 2025) (cleaned up). For law to be clearly established, existing precedent must have placed the constitutional question beyond debate. *Id.* Except for the rare obvious constitutional violation, the plaintiff must identify a case that every reasonable official would interpret as establishing the rule he seeks to apply. *Id.* In excessive force cases, where it can be difficult for an officer to determine how the relevant legal doctrines apply to the factual situation at hand, correctional officers are entitled to qualified immunity "unless existing precedent squarely governs the *specific* facts at issue." *Id.* at 370.

Qualified immunity is an affirmative defense. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). Once raised, it is the plaintiff's burden to defeat it. *Id.* To do so, the plaintiff must identify case law that has articulated the right at issue and applied it to factual circumstances similar to the ones at issue. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013).

Whether qualified immunity exists turns on two questions: (1) whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and (2) whether the federal right at issue was clearly established at the time of the violation. *Finkley,* 10 F.4th at 737 (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)). If either question is answered in the negative, the defendant is entitled to qualified immunity. *Id.*

As the Court found above, the facts taken in the light most favorable to Plaintiff do not describe a violation of a constitutional right. Nor was the federal right at issue clearly established at the time of the violation. The use of overly restrictive and unnecessary security measures, including physical restraints, can violate the Eighth Amendment. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (handcuffing subdued prisoner to hitching post for seven hours in the heat without water or bathroom breaks obviously violated the Eighth Amendment); *see Ajala v. Tom*, 658 F. App'x 805, 806–07 (7th Cir. 2016) (unpublished) (clearly established that using restraints to inflict prolonged, unnecessary pain violates the Eighth Amendment). But Plaintiff has not pointed to an analogous case in which a court found that a convicted prisoner had a right to be free from unwanted and painful physical contact arising from the placement of restraints on him pursuant to prison policy during a medical furlough. Plaintiff did not address the issue at all in his original response to the motion. He later submitted a revised brief (Dkt. No. 73) without leave of court to address the qualified immunity issue. But even if the Court considers this brief, Plaintiff points only to cases establishing the principle that the Eighth Amendment prohibits the

unnecessary and wanton infliction of pain. (*See id*. at pg. 4 (citing, *inter alia*, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). He does not point to a Supreme Court or Seventh Circuit opinion that would have put Officer Vasallo on notice that his conduct violated the Constitution. In fact, Seventh Circuit precedent cuts against Plaintiff's position. *See Stewart*, 14 F.4th at 764 (observing that prisoners who are taken to outside medical providers can pose a security threat, and courts should give deference to preventative measures meant to address this risk). Because Plaintiff has not identified a violation of a clearly established right, Defendant is entitled to qualified immunity.

Defendant's motion for summary judgment is granted. Final judgment will be entered. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

### III.    Conclusion

Defendant's motion for summary judgment [52] is granted. Plaintiff's motion to supplement [68] is granted to the extent that the Court has considered the attached medical record in ruling on this motion. The Clerk is directed to enter final judgment and send a copy of this order to Plaintiff.

ENTER:

Date: January 6, 2026

Manish S. Shah
United States District Judge

22